# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| BELINDA MARTIN, ) | |
|    PLAINTIFF, ) | |
| ) | CIVIL ACTION FILE NO. |
| V. ) | |
| ) | |
| FINANCIAL ASSET MANAGEMENT ) | |
| SYSTEMS, INC., AMERICAN ) | |
| CAPITAL STRATEGIES LTD., AND ) | |
| JERRY HOGAN, ) | |
| ) | JURY TRIAL DEMANDED |
|    DEFENDANTS. ) | |

## COMPLAINT FOR DAMAGES

**COMES NOW** Plaintiff, Belinda Martin (hereinafter "Plaintiff" or "Ms. Martin"), by and through the undersigned counsel, and sets forth this Complaint for Damages against the above-named Defendants: Financial Asset Management Systems, Inc. (hereinafter "FAMS"), American Capital Strategies Ltd. (hereinafter "ACSL") and Jerry Hogan, (hereinafter "Hogan") (collectively "Defendants").

1.

This is a lawsuit for damages arising from race-based discrimination and retaliation toward the Plaintiff, a former employee of Defendant Employer, brought pursuant to 42 U.S.C. § 1981 (hereinafter "Section 1981") and Title VII of the Civil

1

Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (hereinafter "Title VII"), the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. and other state-law claims.

## PARTIES

2.

Plaintiff is a resident and citizen of the State of Georgia.

3.

Plaintiff is an African-American female and a member of a protected class under Section 1981 and Title VII.

4.

Defendant FAMS is a corporation formed under the laws of the state of Georgia, registered to conduct business in the state of Georgia, and subject to the jurisdiction of this Court.

5.

Defendant FAMS may be served by delivering a copy of the complaint and summons to its registered agent: Timothy J. Burson, 200 Ashford Center North, Suite 500, Atlanta, GA  30338, if service of process is not waived.

6.

Defendant ACSL is a corporation formed under the laws of the state of Delaware, and is not registered to conduct business in the state of Georgia, but is

subject to the jurisdiction of this Court by virtue of its operation within this jurisdiction.

7.

Defendant ACSL may be served by delivering a copy of the complaint and summons to its principal office: 3 Bethesda Metro Center, Ste. 860, Bethesda, MD 20814, if service of process is not waived.

8.

Defendant Hogan, upon information and belief, is a resident and citizen of the State of Georgia.

9.

Defendant Brown, upon information and belief, resides within the geographic boundaries of this Court.

10.

Upon information and belief, Defendant Brown can be served with service of process at 1967 Lakeside Parkway, Suite 402, Tucker, Georgia  30084, if formal service of process is not waived.

## JURISDICTION AND VENUE

11.

Plaintiff is subject to the jurisdiction and venue of this Court.

12.

This Court has jurisdiction over this case and Defendant FAMS.

13.

This Court has jurisdiction over this case and Defendant ACSL.

14.

This Court has jurisdiction over Defendant Hogan.

15.

All parties to this action reside, operate, or are located within the boundaries of this judicial district, and venue is proper pursuant to, inter alia, 28 U.S.C. Section 1391(b)(2) and 42 U.S.C. Section 2000e-(f)(3) as the unlawful acts complained of herein occurred within the geographic boundaries of this Court.

## STATEMENT OF FACTS

16.

Defendant FAMS operates as a debt collection agency with call centers in Georgia, Missouri, and Ohio, and employs over 500 employees.

17.

Defendant ACSL is a publically traded private equity firm and global asset manager.

18.

In or around 2005, Defendant ACSL acquired FAMS through a buyout of FAMS and ACSL and FAMS became joint employers of the employees of FAMS.

19.

During Plaintiff's employment, ACSL had the ability to hire or fire FAMS employees, to discipline FAMS employees, to increase or decrease the compensation and benefits of FAMS employees, and to direct the performance of FAMS employees.

20.

Defendants FAMS and ACSL (hereinafter "Defendant Employer") jointly employed Plaintiff.

21.

Defendant Employer employed fifteen or more employees for each working day in each of twenty or more calendar weeks surrounding the Plaintiffs' employment in 2012 - 2013.

22.

At all times relevant to this lawsuit, Plaintiff, Belinda Martin, was an eligible employee pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. (hereinafter the "FMLA") as she was employed with Defendant Employer for more than 12 months, and had worked 1,250 hours for Defendant Employer within the preceding 12 months.

23.

During all time relevant to this lawsuit, Defendant Employer employed more than fifty (50) employees for each working day during each of twenty (20) or more calendar weeks in each calendar year relevant hereto.

24.

Defendant Employer and Defendant Hogan, at all times described herein, were acting directly and indirectly in the interest of Plaintiff's employer and are employers under the FMLA.

25.

Defendant Employer is subject to the anti-discrimination and anti-retaliation provisions of Title VII.

26.

Defendant Employer and Defendant Hogan are subject to the anti-discrimination and anti-retaliation provisions of Section 1981.

27.

Plaintiff began employment with Defendant Employer around January, 2009, as operations manager.

28.

Subsequently, Plaintiff was promoted to Director of Operations.

29.

On or around October 10, 2012, Plaintiff filed a charge of discrimination against FAMS with the Equal Employment Opportunity Commission, Atlanta District Office ("EEOC").

30.

In her October 10, 2012, Charge Plaintiff complained that Defendant Hogan was discriminating against Plaintiff on the basis of her race and gender, as Defendant Hogan would scream profanities at Plaintiff, kick chairs, throw bottles, and bang on the table during on-on-one feedback sessions with Plaintiff, but did not engage in similar behaviors with Plaintiff's Caucasian or male co-workers.

31.

Plaintiff also complained in her October 10, 2012, Charge that Defendant Hogan retaliated against Plaintiff by refusing to meet with her, pretextualy lowering Plaintiff's evaluation, and fabricating reasons to suspend Plaintiff from work.

32.

Plaintiff, Defendant Employer, and Defendant Hogan attended mediation at the EEOC in December, 2012, and entered into a settlement with Plaintiff regarding her 2012 charges of discrimination.

33.

Subsequent to December, 2012, however, Defendant Hogan began again frequently verbally abusing Plaintiff, yelling profanities toward Plaintiff, and subjecting Plaintiff to disparate treatment based on her race and gender on a near daily basis, and created a hostile work environment based on Plaintiff's race and gender.

34.

Furthermore, Defendant Hogan began fabricating performance issues with regard to Plaintiff in retaliation for her complaints of race-based discrimination against him, created bogus performance issues, and subjected Plaintiff to worse working conditions than her Caucasian and male co-workers.

35.

On or around February 26, 2014, Plaintiff made a verbal complaint of race and gender-based discrimination against Defendant Hogan to Lida Bayne, Vice President of Human Resources for FAMS.

36.

Plaintiff was crying uncontrollably as she described the almost constant barrage of profanity and disparate treatment she was being subjected to by Defendant Hogan.

37.

Plaintiff also told Ms. Bayne that she needed the rest of the week off work to visit a healthcare provider, as Defendant Hogan's behavior had caused Plaintiff significant emotional distress.

38.

Ms. Bayne told Plaintiff to take care of her heath, and that she would be allowed to take as much time off work as she needed.

39.

By requesting a time off work to visit a healthcare provider, Plaintiff sought to exercise her rights under the FMLA, and placed Defendants on notice of her need for FMLA leave.

40.

On or around February 27, 2014, Plaintiff contacted her healthcare administrator and requested a referral to a healthcare provider. Plaintiff made an appointment to see her HealthCare provider on February 28, 2014.

41.

Plaintiff was seen by her healthcare provider late on February 28, 2014, and Plaintiff was directed to contact her employer the next day to specifically request

FMLA leave.

42.

On or around March 1, 2014, Plaintiff received a separation notice dated February 28, 2014,

43.

On or around March 3, 2014, Plaintiff filed a third charge of discrimination against FAMS.  Although Plaintiff's charge had been mediated, Defendant Hogan continued to scream profanities and verbally abuse Plaintiff.  Plaintiff's Caucasian, male co-workers were not subjected to Defendant Hogan screaming profanities at them, or the verbal abuse that Plaintiff was subjected to.

44.

A true and accurate copy of Plaintiff's third Charge of Discrimination is attached hereto as Exhibit "A" and is incorporated herein.

45.

On or around December 19, 2014, Plaintiff was issued a Notice of Right to Sue.

46.

A True and accurate copies of Plaintiff's Notice of Right to Sue is attached hereto as Exhibit "B" and is incorporated herein.

47.

This action has been commenced within 90 days of Plaintiff receiving her Notice of Right to Sue.

48.

At the time of Plaintiff's termination, Plaintiff was earning approximately $120,000.00 per year.

**FIRST AND SECOND CAUSES OF ACTION: RACE AND GENDER-BASED DISCRIMINATION UNDER TITLE VII AND RACE—BASED DISCRIMINATION UNDER SECTION 1981**

49.

Plaintiff incorporates by reference paragraphs 1-48 of this Complaint as if fully set forth herein.

50.

Plaintiff is a member of two protected classes, as Plaintiff is an African-American female.

51.

Plaintiff was qualified for the positions she held.

52.

Plaintiff was subjected to a hostile work environment and disparate treatment by Defendant Employer and Defendant Hogan; Plaintiff was ultimately termination because of Plaintiff's race and gender: African-American female.

53.

In promulgating disparate treatment and termination of Plaintiff's employment, Defendant Employer and Defendant Hogan treated Plaintiffs less favorably than similarly situated individual outside of Plaintiffs' protected class.

54.

As a direct and proximate result of Defendant's above-mentioned discriminatory actions, Plaintiff has suffered lost wages and benefits, significantly diminished employment opportunities and emotional distress consisting of but not limited to outrage, shock, and humiliation.

55.

Defendant Employer and Defendant Hogan have engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights thereby entitling Plaintiff to punitive damages.

## THIRD AND FOURTH CAUSE OF ACTION UNLAWFUL RETALIATION UNDER TITLE VII AND SECTION 1981

56.

Plaintiff incorporates by reference paragraphs 1-55 of this Complaint as if fully set forth herein.

57.

Plaintiff complained about the gender and race-based discrimination Plaintiff was subjected to while employed by Defendant Employer; Plaintiff's complaints of

illegal race and gender-based discrimination were protected activity under Title VII and Section 1981.

58.

As a result of such complaints, Plaintiff suffered an adverse employment actions including threats against her job and suspension, loss of bonuses, and was retaliated against until Plaintiff was ultimately fired.

59.

This retaliation was a result of the Plaintiff's complaints of illegal race and gender-based discrimination.

60.

Plaintiff suffered damages as a result of Defendants' retaliatory conduct.

61.

As a direct and proximate result of Defendants' above-mentioned discriminatory actions, Plaintiff has suffered lost wages, significantly diminished employment opportunities and emotional distress consisting of but not limited to outrage, shock, and humiliation.

## **FIFTH CAUSE OF ACTION: INTERFERENCE WITH THE FMLA, 29 U.S.C. § 2601 ET SEQ.**

62.

Plaintiff incorporates by reference paragraphs 1 through 61 of this Complaint as if fully set forth verbatim herein.

63.

Plaintiff had been employed with Defendant Employer for at least twelve (12) months and for at least 1,250 hours of service during the previous twelve (12) month period, qualifying her for leave pursuant to the FMLA in 2013 and 2014.

64.

At all times relevant to this action, Defendant Employer had more than 50 employees in twenty (20) or more workweeks in the current or preceding year, and was engaged in commerce or was part of an industry affecting commerce, making it an "eligible employer" as defined by the FMLA., 29 U.S.C. § 2611(40(A).

65.

Plaintiff applied for leave pursuant to the FMLA in or around February 26, 2014.

66.

Plaintiff, on February 26, 2014, had a serious health condition covered by the FMLA, for which she should have been allowed to take time of work and had protection for her job.

67.

On or around March 1, 2014, Plaintiff's employment was terminated to interfere with Plaintiff's use of FMLA, and to prevent other employees from seeking FMLA leave, and to prevent Plaintiff from engaging in future use of FMLA leave.

68.

Defendant Employer's and Defendant Hogan's interference with Plaintiff's FMLA leave right have caused damage to Plaintiff, including but not limited to loss of income, diminished job opportunities, and loss of employer provided benefits.

## SIXTH CAUSE OF ACTION: RETALIATION UNDER THE FMLA

69.

Plaintiff incorporates by reference paragraphs 1 through 68 of this Complaint as if fully set forth verbatim herein.

70.

Plaintiff engaged in or in good faith believed that she was engaging in statutorily protected activity when she requested time off for a serious health condition pursuant to the FMLA.

71.

Defendant Employer and Defendant Hogan took an adverse action against Plaintiff by firing Plaintiff because she requested leave and attempted to exercise her rights under the FMLA.

72.

Defendants terminated Plaintiff because she engaged in protected activity by requesting FMLA leave, contrary to the anti-retaliation provisions of the FMLA.

73.

Defendants illegal retaliation toward Plaintiff has caused damage to Plaintiff, including but not limited to loss of income, diminished job opportunities, and loss of employer provided benefits.

## SEVENTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

74.

Plaintiff incorporates by reference paragraphs 1 through 73 of this Complaint as if fully set forth verbatim herein.

75.

Defendants engaged in intentional and reckless conduct in discriminating against Plaintiff on the basis of her gender and race, retaliating against Plaintiff for her request for FMLA leave and use of FMLA leave during her employment with Defendant Employer.

76.

Defendants' conduct was extreme and outrageous, as it was contrary to Plaintiff's know federally protected rights, and under such circumstances that no reasonable person could believe the Defendants acted in good faith.

77.

Defendants' conduct of retaliating against Plaintiff with termination caused Plaintiff to suffer emotional distress, and naturally humiliated, embarrassed, and frightened Plaintiff.

78.

The emotional distress suffered by Plaintiff after she was retaliated against in violation of the anti-retaliation provisions of the FMLA, Title VII, and Section 1981, lost her job, all benefits from employment, and her income she had earned from employment with Defendant Employer was severe.

## EIGHTH AND NINTH CAUSES OF ACTION: NEGLIGENT SUPERVISION AND RETENTION

79.

Plaintiff incorporates by reference paragraphs 1 through 78 of this Complaint as if fully set forth verbatim herein.

80.

Defendant Employer knew that Plaintiff was being discriminated against illegally on the basis of her race, gender, and because she engaged in protected activity under the FMLA, Title VII, and Section 1981.  However, Defendant Employer failed to take prompt and appropriate remedial steps to protect Plaintiff from further discrimination and retaliation.

81.

Further, after Plaintiff filed two prior EEOC charges and, Defendants still retaliated against Plaintiff and interfered with Plaintiff's federally-protected FMLA rights.

82.

As a result of Defendant Employer's negligent retention and/or supervision, Plaintiff suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

**WHEREFORE**, the Plaintiffs prays as follows:

(a)   that Summons issue for Defendants;

(b)   that a trial by jury to all issues be had;

(c)   judgment against Defendants for any and all general, special, and, where applicable, punitive damages as allowed by law under each and every count and cause of action contained in this complaint;

(d)   for an award of punitive damages against the Defendants;

(e)   for injunctive relief and liquidated damages as the Court may deem proper;

(f)   for all costs of this action to be taxed against Defendants;

(g)   for all costs and attorneys fees to be awarded to Plaintiff; and

(h)    for any and all other and further relief as this Court may deem just and equitable under the circumstances.

Respectfully submitted this 13th day of March, 2015.

/s/ J. Stephen Mixon, Esq.
J. Stephen Mixon, Esq.
Georgia Bar No. 514050
steve@mixon-law.com

/s/ Alex R. Roberson.
Alex R. Roberson
Georgia Bar No. 558117
alex@mixon-law.com

**MILLAR & MIXON, LLC**
1691 Phoenix Boulevard, Suite 150
Atlanta, Georgia  30349
770-955-0100 (phone)
678-669-2037 (fax)